UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
RAFAEL MARTINEZ,                             :
                Plaintiff,       :
v.                                           :
                                        :    **<u>OPINION AND ORDER</u>**
JAMIE LAMANNA, Superintendent, Green         :
Haven Correctional Facility; and ROBERT      :    19 CV 3348 (VB)
BENTIVEGNA, Medical Director, Green          :
Haven Correctional Facility,                 :
                Defendants.      :
------------------------------------------------------------x

<u>Briccetti, J.</u>:

       Plaintiff Rafael Martinez brings this action pursuant to 42 U.S.C. § 1983 against

defendants Green Haven Correction Facility ("Green Haven") former Superintendent ("Supt.")

Jamie LaManna and Green Haven Medical Director Robert Bentivegna, alleging an Eighth

Amendment claim for deliberate indifference to serious medical needs.

       Now pending is defendants' motion to dismiss the complaint.  (Doc. #14).

       For the following reasons, the motion is GRANTED.

       The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

       For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-

pleaded factual allegations in the complaint and its attachments, and draws all reasonable

inferences in plaintiff's favor, as summarized below.

       At all times relevant to the complaint, plaintiff was incarcerated at Green Haven.

       On August 9, 2017, plaintiff underwent lumbar spine surgery at Westchester Medical

Center.  The surgery was performed by Dr. Charles Garell, a neurosurgeon.  Plaintiff alleges he

had significant pain in his lower back and right leg following the surgery.  He was prescribed

medication and given a walker to help ambulate.

1

According to plaintiff, on March 19, 2018, following a consultation at Putnam Hospital Center ("Putnam Hospital"), Dr. Garell ordered an MRI and a CT scan on plaintiff's lower back. The MRI was conducted on June 13, 2018, and revealed fluid collection near the lower lumbar disc levels.

Plaintiff alleges the CT scan was scheduled to be performed at Putnam Hospital on four separate occasions between March 19, 2018, and September 27, 2018, but was cancelled each time for lack of available staff to transport plaintiff from Green Haven to Putnam Hospital.

On September 11, 2018, plaintiff was seen by Dr. Silver, plaintiff's primary care physician at Green Haven. According to plaintiff, Dr. Silver concluded plaintiff should be sent to Putnam Hospital on an emergency basis for a CT scan due to plaintiff's worsening back condition and pain. Dr. Silver allegedly observed "severe atrophy [in plaintiff's] right leg, high blood pressure because of the painful state, and fast[] heartbeats." (See Doc. #2 ("Compl.") at ECF 5).[1]

Plaintiff alleges Dr. Silver asked Dr. Bentivegna for permission to send plaintiff to Putnam Hospital on September 11, 2018, but that Dr. Bentivegna denied the request. That day, plaintiff filed a grievance concerning Dr. Bentivegna's denial.

By letter dated September 13, 2018, plaintiff informed Supt. LaManna of Dr. Silver's request and Dr. Bentivegna's denial, and requested assistance in obtaining a CT scan at Putnam Hospital. (See Compl. at ECF 21).

By letter dated September 17, 2018, at the direction and on behalf of Supt. LaManna, Dr. Bentivegna responded to plaintiff's September 13 letter. Dr. Bentivegna wrote:

> As your back surgery was performed over a year ago, and apparently you have been having issues since then, by definition the situation is not an emergency,

---

[1]    "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

and an emergency trip for a CT scan was not medically appropriate.  Had the situation been emergent, Dr. Garell would have admitted you directly to the hospital after your visit with him in March [2018].

You did have an MRI of the spine in June, it did not appear that any findings required urgent follow up.

I only became aware in the last week that your test had been delayed since March.  I have requested an expedited date for you to receive the CT scan, and we will attempt to make you a priority with regards to transportation at that time.

(Compl. at ECF 23).

Ten days later, on September 27, 2018, plaintiff was transported from Green Haven to Putnam Hospital for a CT scan.  The test revealed "loosening of both fixation screws within the S1 vertebral body" (Compl. at ECF 6), and suspected migration of a "disc prosthesis . . . that projects into the region of the right neuroforamina."  (Doc. #2-1 at ECF 12).

On November 5, 2018, plaintiff was again transported to Putnam Hospital for a follow-up consultation with Dr. Garell, who recommended plaintiff undergo a second lumbar spine surgery.  Dr. Garell performed the second surgery on January 16, 2019, at Westchester Medical Center.

**DISCUSSION**

I.   Legal Standard

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[2]  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678;

---

[2]      Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

II.    Exhaustion

Defendants argue plaintiff's complaint should be dismissed because plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit.

The Court disagrees.

Under Rule 12(b)(6), dismissal on the grounds of lack of exhaustion is appropriate when, on the face of the complaint, it is clear plaintiff did not exhaust all remedies, including all administrative appeals, before commencing the action.  Woodford v. Ngo, 548 U.S. 81, 90–93 (2006).  The exhaustion requirement "applies to all inmate suits about prison life, whether they

involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

For a New York state prisoner to exhaust his claim, he must comply with the three steps of New York's Inmate Grievance Program ("IGP"):  (i) submitting a complaint to the clerk of the Inmate Grievance Resolution Committee ("IGRC") within twenty-one days of the alleged incident, (ii) appealing the decision to the superintendent within seven days of the IGRC's response, and (iii) appealing to the Central Office Review Committee ("CORC") within seven days of the superintendent's response.  N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5.  CORC generally has "30 calendar days" to render a decision on a grievance appeal.  Id. § 701.5(d).

"Nevertheless, an inmate need not exhaust administrative remedies if those remedies are unavailable."  Smith v. Lioidice, 2020 WL 1033644, at *4 (S.D.N.Y. Mar. 2, 2020).   An administrative remedy is "functionally unavailable" when "it operates as a simply dead end" or is "so opaque that it becomes, practically speaking, incapable of use."  Id. (quoting Ross v. Blake, 136 S. Ct. 1850, 1859 (2016).

Here, the complaint plausibly suggests that on September 11, 2018, plaintiff submitted a grievance to the IGRC.  Although the IGRC recommended on September 25, 2018, that plaintiff receive the CT scan he had been waiting for, plaintiff appealed the decision.  On November 9, 2018, the first deputy superintendent denied the appeal because plaintiff "received a CAT scan on 9/27/18."  (Doc. #2-1 at ECF 28).  On November 20, 2018, plaintiff appealed his grievance to CORC.  (Id.).  On December 31, 2018, and again on March 15, 2019, plaintiff wrote to CORC to inquire of the status of his appeal.  (See id. at ECF 29, 31).  Having not received a decision from CORC, plaintiff commenced the instant action on April 15, 2019.

Defendants argue plaintiff must have waited to receive a decision from CORC prior to commencing this case.  However, at this stage of the proceedings, and because plaintiff

commenced this lawsuit 146 days after he appealed his grievance to CORC, the Court declines to dismiss plaintiff's complaint on exhaustion grounds.  See Mayandeunas v. Bigelow, 2019 WL 3955484, at 4 (N.D.N.Y. Aug. 22, 2019) (noting "the Court . . . has trouble finding that the Second Circuit would not place a reasonable limit on the time in which CORC must issue a decision (or have the prisoner's appeal be deemed by federal court to be effectively denied)").

III.    Deliberate Indifference to Serious Medical Needs

Defendants argue plaintiff has failed to allege their personal involvement in any violation of plaintiff's constitutional rights.

The Court agrees.

A.    Legal Standard

To state a claim for constitutionally inadequate medical care, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  This test has an objective prong and a mens rea prong:  a plaintiff must plausibly allege (i) a "sufficiently serious" inadequacy of medical care, and (ii) that the officials in question acted with a "sufficiently culpable state of mind." Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006).

The objective prong has two subparts.  First, a plaintiff must adequately plead he "was actually deprived of adequate medical care."  Salahuddin v. Goord, 467 F.3d at 279.  Because "the prison official's duty is only to provide reasonable care," prison officials violate the Eighth Amendment only if they fail "'to take reasonable measures' in response to a medical condition." Id. at 279–80 (quoting Farmer v. Brennan, 511 U.S. 825, 847 (1994)).  Second, a plaintiff must plausibly allege "the inadequacy in medical care is sufficiently serious."  Id. at 280.  Courts assess this by examining "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner."  Id.  If the allegedly offending conduct

"is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." Id.  But if the offending conduct is the "medical treatment given, the seriousness inquiry is narrower." Id.

The mens rea prong requires the plaintiff to plausibly allege "the official acted with deliberate indifference to inmate health." Salahuddin v. Goord, 467 F.3d at 280.  Mere negligence does not give rise to an Eighth Amendment violation.  See Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010).  Accordingly, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle v. Gamble, 429 U.S. at 106.  In other words, medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness.  See Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).

However, it is well established that "negligence, even if it constitutes medical malpractice, does not, without more," give rise to a constitutional claim.  Chance v. Armstrong, 143 F.3d at 703.  "[D]istinguishing between negligent and reckless medical care is a difficult task, especially at the motion-to-dismiss stage where courts lack the benefit of expert opinion." Zhang v. City of New York, 2018 WL 3187343, at *8 (S.D.N.Y. June 28, 2018).  Courts often look to the "degree of risk associated with the negligent treatment." See id. (collecting cases). Moreover, "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to" a constitutional violation.  Chance v. Armstrong, 143 F.3d at 703.

B.     Personal Involvement

To adequately plead a Section 1983 claim, a plaintiff must also "plead that each Government-official defendant, through the official's own individual actions, has violated the

Constitution." Ashcroft v. Iqbal, 556 U.S. at 676. Indeed, "personal involvement of defendants

in alleged constitutional deprivations is a prerequisite to an award of damages under Section

1983." Wright v. Smith, 21 F.3d 496, 501 (2d. Cir. 1994).

> Supervisor liability under § 1983 can be shown in one or more of the following
> ways:  (1) actual direct participation in the constitutional violation, (2) failure to
> remedy a wrong after being informed through a report or appeal, (3) creation of a
> policy or custom that sanctioned conduct amounting to a constitutional violation,
> or allowing such a policy or custom to continue, (4) grossly negligent supervision
> of subordinates who committed a violation, or (5) failure to act on information
> indicating that unconstitutional acts were occurring.

Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003) (citing Colon v. Coughlin, 58 F.3d 865,

873 (2d Cir. 1995)).[3]

Moreover, Section 1983 liability cannot be predicated on a theory of respondeat superior.

See City of Canton v. Harris, 489 U.S. 378, 385 (1989). Indeed, "[t]he bare fact that [a

defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain

[a] claim." Colon v. Coughlin, 58 F.3d at 874.

C.     Application

1.     Supt. LaManna

Plaintiff argues allegations concerning Supt. LaManna's personal involvement are not

necessary pursuant to the Supreme Court's holding in Brown v. Plata, 563 U.S. 493 (2011), and

that, even if they were, plaintiff sufficiently alleges Supt. LaManna's personal involvement by

claiming he breached a "duty of care  . . . [to] ensure that the prison was properly staffed to

---

[3]     After Ashcroft v. Iqbal, district courts within the Second Circuit have been divided as to
whether claims alleging personal involvement under the second, fourth, and fifth of these factors
remain viable.  See Marom v. City of New York, 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7,
2016) (collecting cases).  The Second Circuit has yet to resolve this dispute.  Id.

address urgent medical needs."  (Doc. #25 ("Pl. Mem.") ¶ 9).  Plaintiff contends such a breach "itself rises to a level of gross negligence that is cognizable under the Eighth Amendment."  Id.

Plaintiff is mistaken.  First, "Plata [v. Brown] . . . required the State of California to reduce prison overcrowding to improve a systemic denial of medical services to inmates. Accordingly, Plata is inapposite to the type of claim that plaintiff raises—an alleged denial of medical treatment to one inmate in response to one serious medical condition."  Legare v. Lee, 2016 WL 633863, at *7 (C.D. Cal. Feb. 17, 2016) (discussing Plata v. Brown, 563 U.S. at 493). Here, plaintiff's complaint "raises no allegation that the state has provided insufficient resources to provide inmates . . . with adequate medical care."  Id.  That plaintiff's CT scan was rescheduled several times does not suggest Supt. LaManna was aware of, and consciously disregarded, an institutional problem at Green Haven requiring remedial measures as those set forth in Plata v. Brown.

Indeed, plaintiff's allegations fail to suggest Supt. LaManna directly participated in a constitutional violation, or failed to remedy a wrong after being informed of a constitutional violation, or created a policy or custom sanctioning conduct amounting to a constitutional violation, or was grossly negligent in his supervision of subordinates who committed a constitutional violation, or failed to act on information indicating that unconstitutional conduct was occurring.  See Richardson v. Goord, 347 F.3d at 435.  Rather, the complaint and its attachments reflect that, upon receipt of plaintiff's September 13, 2018, letter, Supt. LaManna directed Dr. Bentivegna to address plaintiff's correspondence and the issues it raised.  This alone does not establish personal involvement.  See Burns v. Griffin, 2018 WL 3059655, at *7 (S.D.N.Y. June 20, 2018) ("There is no personal involvement when a prison official merely receives [a letter] and refers [it] for investigation and response.").

As an additional matter, plaintiff's allegations respecting Supt. LaManna sound wholly in negligence, which, without more, do not give rise to a constitutional violation.  See Chance v. Armstrong, 143 F.3d at 703.

For the above reasons, plaintiff fails plausibly to plead Supt. LaManna's personal involvement in an alleged constitutional violation.  Accordingly, the claims against Supt. LaManna are subject to dismissal.

> 2.   Dr. Bentivegna

Plaintiff's deliberate indifference claim against Dr. Bentivegna fails as well.  Although plaintiff argues Dr. Bentivegna "should have known" plaintiff's CT scan appointments were cancelled and rescheduled several times, (Pl. Mem. ¶ 10), plaintiff fails plausibly to suggest Dr. Bentivegna's personal involvement in any of the cancellations or reschedulings.  Indeed, plaintiff fails to allege Dr. Bentivegna had any involvement in plaintiff's medical care prior to September 2018, when Dr. Bentivegna actually expedited plaintiff's CT scan appointment.

Yet, even if plaintiff did sufficiently allege Dr. Bentivegna's personal involvement, plaintiff nevertheless fails plausibly to state an Eighth Amendment deliberate indifference claim. That Dr. Bentivegna initially declined to approve plaintiff's transport to an outside facility for a CT scan on September 11, 2018, following a review of plaintiff's medical records, does not suggest Dr. Bentivegna was deliberately indifferent to a serious medical need.  In other words, plaintiff's allegations fail to suggest Dr. Bentivegna consciously subjected plaintiff to a serious risk of harm.  To the extent plaintiff suggests Dr. Bentivegna was negligent in declining to approve transport for an emergency CT scan on September 11, 2018, this alone does not plausibly allege a constitutional violation.  Chance v. Armstrong, 143 F.3d at 703.

To the contrary, the complaint and its attachments suggest that when Supt. LaManna instructed Dr. Bentivegna to respond to plaintiff's September 13, 2018, letter, which informed

Dr. Bentivegna that plaintiff's CT scan had been cancelled and rescheduled several times, Dr. Bentivegna expedited plaintiff's CT scan appointment.  Indeed, plaintiff's CT scan was performed on September 27, 2018, ten days after Dr. Bentivegna responded to plaintiff's letter.

For the above reasons, plaintiff's Eighth Amendment claim against Dr. Bentivegna is subject to dismissal.[4]

**CONCLUSION**

Defendants' motion to dismiss is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #14) and close this case.

Dated:  April 28, 2020
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

---

[4]      Defendants also argue plaintiff's claims should be dismissed on qualified immunity grounds and, to the extent the claims are pleaded against Supt. LaManna and Dr. Bentivegna in their official capacities, on Eleventh Amendment grounds.  The Court does not reach these arguments, as plaintiff fails outright to state a plausible Eighth Amendment deliberate indifference claim.